James E. ELAM *v.*
FIRST UNUM LIFE INSURANCE COMPANY,

CA 00-316                                                            37 S.W.3d 679

Court of Appeals of Arkansas
Division III
Dissenting opinion delivered February 21, 2001

SAM BIRD, Judge, dissenting. In *Elam v. First Unum Life Ins. Co.*, 72 Ark. App. 54, 32 S.W.3d 486 (2000), a three-judge panel of this court reversed the trial court's grant of summary judgment in favor of First Unum Life Insurance Company upon the trial court's finding that the term "mental illness," as contained in a coverage limitation provision of a long-term-disability insurance policy, was not ambiguous. In its opinion, this court concluded that the trial court should not have granted summary judgment because the term "mental illness" is ambiguous, and because it is a fact issue, not a question of law, whether Mr. Elam's bipolar affective disorder is a mental illness within the meaning of First Unum's policy. I would grant First Unum's petition for rehearing in this case and affirm the trial court because I believe that, as applied to the facts of this case, the term "mental illness" is not ambiguous; that the trial court was not erroneous in finding that no ambiguity

existed; and that appellant's bipolar affective disorder is a mental illness within the meaning of the policy.

There was no dispute between the parties that during the period of time applicable to the policy, Elam suffered from bipolar affective disorder. Nor was there any dispute that Elam was a psychiatric patient during that time. Doctors Bradley C. Diner and Joe T. Backus, the two psychiatrists who testified by deposition in support of Elam's claim, agreed that bipolar affective disorder is a mental illness, notwithstanding the currently evolving theory of researchers that the cause of the disorder may be biologically based. Although Dr. Diner expressed his opinion in more certain terms ("[i]t is my professional belief that all mood disorders have a biological basis") than did Dr. Backus ("[t]he present research believes that they have a mixture of biochemistry and life experience and how someone interacts with that experience"), both doctors agreed that bipolar disorder is classified as a mental illness, that there are no specific biological diagnostic markers for detecting bipolar affective disorder or any other mental illness, and that the only diagnostic technique for the detection of bipolar affective disorder and other mental illnesses is the observation of overt behavior, clinical presentation, and history.

The term "mental illness" in First Unum's policy is not rendered ambiguous merely because there may be disagreement among researchers in the mental health community whether, or to what extent, an insured's bipolar disorder may be caused by biological abnormalities. A mental illness that may be caused, in whole or in part, by an underlying biological condition is no less a mental illness than one that may be caused by the patient's reactions to life's experiences. To say that the term "mental illness" is ambiguous under these circumstances, and to require insurance policies to specifically define every theory of causation of every mental illness for which coverage is intended to be limited under the policy, would require that insurers predict in advance what theory the mental health community will next conclude is the cause of each mental illness.

According to Dr. Backus, different kinds of mental illness may have different, non-biological causes. For example, he discussed certain personality disorders, recognized as mental illnesses, as follows:

> [They] are thought to be the product of the interaction of a very young child, probably an age of one to three, maybe four years old, and interaction with the mother and father. Most theories now feel like the relationship with the mother is very, very important in the description of personality disorders.

Would the insurance policy, in order to avoid the pitfall of ambiguity in its limitation on coverage for mental illnesses, be required to specify every mental illness to which it is intended to apply and then define each such illness according to the different and evolving theories of causation within the mental health community? Would a policy that was issued containing a specific limitation of coverage for bipolar affective disorder, whose cause was believed when the policy was issued to be biologically based, become ambiguous when a new, previously unheard of, non-biologically based theory of causation of bipolar disorder became popular in the mental health community?

While the majority opinion engages in a theoretical discussion about how there are some physical conditions (*i.e.*, brain tumors) that may manifest themselves by symptoms normally associated with mental illness, and about there being some mental conditions (*i.e.*, stress and depression) that may manifest themselves as stomach disorders or headaches, I fail to understand what these observations have to do with the case at bar. Here, the psychiatric experts agree that Elam suffers from bipolar affective disorder, they agree that all the symptoms he exhibits support their diagnosis, and they agree that bipolar affective disorder is a mental illness. This is the information the trial judge had to consider in determining whether "mental illness" is ambiguous as applied to this case under First Unum's policy. I do not find the trial court's decision to be erroneous. In fact, I do not see how he could have reached any other conclusion.

For these reasons, I respectfully dissent.